FILED

2008 Feb 21 PM 03:22

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: ) | |
| ) | **JUDGE RICHARD L. SPEER** |
| Rex A. Reimer ) | |
| and ) | |
| Nicki L. Reimer ) | |
| ) | Case No. 07-32787 |
| Debtor(s) ) | |
| ) | |

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss Case for Abuse pursuant to 11 U.S.C. § 707(b)(1) and 11 U.S.C. § 707(b)(3). At the conclusion of the Hearing held on this matter, the Court, before rendering a decision, required the Debtors to submit updated financial information. (Doc. No. 28). This information has now been filed with the Court, and based upon a review of all of the evidence presented in this case, together with the arguments made by the Parties, the Court finds that the Motion of the United States Trustee should be Granted.

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

07-32787-rls    Doc 31    FILED 02/21/08    ENTERED 02/21/08 15:22:05    Page 1 of 9

In re Rex and Nicki Reimer
Case No. 07-32787

The Motion of the United States Trustee (hereinafter referred to as the "UST") to Dismiss is brought pursuant to paragraphs (b)(1) and (b)(3) of § 707. In relevant part, these provisions provide:

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.
>
> > (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
> >
> > > (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Based then upon this hierarchical structure, these two provisions direct that a court is to dismiss a debtor's bankruptcy case if it finds, after weighing the 'totality of the circumstances,' that the filing of the debtor's Chapter 7 case constituted an abuse.

In assessing the totality of the debtor's financial circumstances, a prime consideration will often center on the debtor's ability to repay his or her creditors. *In re Krohn*, 886 F.2d 123, 126-27 (6th Cir. 1989). This case is no exception. In its Motion to Dismiss, the UST stated that the "basis for this motion is that the debtors have the ability to make an effort to repay their creditors." (Doc. No. 18).

Page 2

In re Rex and Nicki Reimer
Case No. 07-32787

A frequently utilized measure, when determining whether a debtor has the ability to repay their debts, is to ascertain whether, under a hypothetical Chapter 13 repayment plan, the debtor could repay a meaningful percentage of his or her unsecured debts. *In re Behlke*, 358 F.3d at 434-35; *In re Glenn*, 345 B.R. 831, 836 (Bankr. N.D.Ohio 2006). In turn, whether a debtor would be able to make, under a Chapter 13 plan of reorganization, a meaningful remuneration to his or her unsecured creditors is primarily contingent upon the amount of "disposable income" the debtor has available to pay into the plan. The term "disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2); *In re Pier*, 310 B.R. 347, 353 (Bankr. N.D.Ohio 2004).

Based upon the financial figures they provided to the Court, the Debtors controverted the UST's assessment regarding their ability to repay their creditors. These figures show that, to service an aggregate unsecured debt burden of $107,337.26, the Debtors have only $57.44 per month in 'disposable income.' (Doc. No. 1). In arriving at this nominal amount, the Debtors claimed total monthly income of $5,500.00. This income, according to the Debtors, is derived solely from Mr. Reimer's employment as an engineer, with Mrs. Reimer temporarily out of the workforce so as to tend to the care of the Debtors' two young children, ages seven and five.

When assessing a debtor's 'disposable income' for purposes of § 707(b)(3), those financial figures provided by the debtor, while constituting a natural starting point, are not dispositive. Rather, "in its role as the trier-of-fact, the Court is under a duty to scrutinize a debtor's expenses, and make downward adjustments where necessary, so as to ensure that the debtor's expenses are reasonable. Similarly, when determining a debtor's 'disposable income,' a court may impute income to the debtor when it would be equitable to do so – *e.g.*, when the debtor is voluntarily underemployed." *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007).

Page 3

On the Debtors' 'ability to pay,' it is the position of the UST that the Debtors, in showing a 'disposable income' of only $57.44, have taken expenses which are either impermissible or which are otherwise excessive. With specificity, the UST took issue against these two categories of expenditures: (1) a $400.00 payment for a student loan; and (2) a $109.98 deduction for a 401(k) contribution. (Doc. No. 18). In addition, the UST maintains that, based upon those tax refunds received in the two years prior, the Debtors have over paid their income-tax liabilities by approximately $5,000.00 per year, or $400.00 per month, and that such overpayments should now be considered income available to repay their creditors. (Doc. No. 30).

One of the strongest policies underlying bankruptcy law is the ratable distribution of assets among all of the debtor's creditors. *See, e.g., XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1453 (6th Cir. 1994). The first point made by the UST, that the Debtors' student-loan payments are not a proper deduction against 'disposable income,' conforms to this basic bankruptcy policy. That is, if a debtor is permitted to deduct in a § 707(b)(3)(B) analysis the amount due on a student loan, that debt would be paid at the expense of the debtor's other creditors. It is the Debtors' position, however, that student-loans may be treated differently given that the Bankruptcy Code excepts this type of debt from discharge.

As the Debtors posit, the Bankruptcy Code, despite its aim of a ratable distribution to creditors, will in certain instances either permit or require that creditors receive unequal treatment. For example, when formulating a Chapter 13 plan, a debtor may, but is not required to place creditors into different classes, subjecting them to different treatment, so long as the plan does "not discriminate unfairly against any class so designated[.]" 11 U.S.C. § 1322(b)(1). The Code also provides a priority scheme, whereby secured creditors, followed then by priority creditors, are entitled to a distribution of estate assets before the debtor's general body of unsecured creditors. 11 U.S.C. § 507.

Page 4

In re Rex and Nicki Reimer
Case No. 07-32787

It is also true that the Bankruptcy Code excepts certain types of debts from discharge. 11 U.S.C. § 523(a). Included among the types of debts excepted from discharge are student-loan obligations. 11 U.S.C. § 523(a)(8). Thus, as they point out, the Debtors will be required to repay their student-loan obligation, which totals $34,942.17, notwithstanding the entry of an order of discharge in their bankruptcy.[1]

The fact, however, that an obligation to pay a debt will survive bankruptcy, does not, on that basis alone, mean that a debtor has the right to treat the claim differently. Otherwise, all nondischargeable debts would be entitled to favorable treatment, including those debts which arise from a debtor's wrongful conduct – *e.g.*, fraud, embezzlement and larceny. 11 U.S.C. § 523(a)(2)/(4). To be sure, in some instances a creditor holding a nondischargeable claim will also be entitled to receive favorable treatment for its claim. For example, tax debts are generally both nondischargeable and entitled to priority treatment. 11 U.S.C. § 507(a)(8); § 523(a)(1).

Yet, the two matters – nondischargeability and the favorable treatment of a creditor's claim – are neither related nor dependent on the other. Instead, each is based upon its own statutory authority. Moreover, their effect is different. On the one hand, when a creditor is afforded favorable treatment for its claim, this treatment comes directly at the expense of the debtor's other creditors. This disparate treatment among creditors, however, does not occur with a nondischargeable debt which only serves to exclude the creditor's claim from the reach of the discharge injunction of § 524(a), thereby allowing the creditor to pursue, at the conclusion of the case, its nonbankruptcy-law

---

[1] In their petition, the Debtors listed their educational debt as a priority, unsecured debt. This classification, however, is incorrect. While student-loan obligations, in the absence of a showing of "undue hardship," are nondischargeable debts, they are not classified under the Bankruptcy Code as priority debts. 11 U.S.C. § 507 (listing priority debts); 11 U.S.C. § 523(a)(8) (providing for nondischargeability of student loans).

Page 5

remedies against the debtor. *See In re Sprolito*, 359 B.R. 423, 427 (Bankr. D.P.R. 2006) ("because student loans are nondischargeable, the discharge injunction does not apply to them.").

Notwithstanding, even assuming the Debtors' position regarding their student loans is correct, it does not mean that a finding of abuse is not warranted. To the contrary, as now set forth, the other two points made by the UST – that concerning their 401(k) contribution and tax refunds – make it difficult for the Court to accept that the Debtors do not have sufficient funds available to pay their creditors.

First, with regards to the Debtors' 401(k) account, this Court has often observed that, as applied to § 707(b)(3), it would be unfair to allow a debtor to commit a part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend. *See, e.g., In re Gonzalez*, 378 B.R. 168, 174 (Bankr. N.D.Ohio 2007). As a result, unless presented with a unique situation, this Court has not permitted debtors, for purposes of § 707(b)(3)(B), to expense against their 'disposable income' voluntary contributions made to retirement accounts. *See, e.g., Id., citing Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775 (6th Cir. 1995) and *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434-35 (6th Cir. 2004). Similarly, an expected tax refund, as it arises from the overpayment of a tax liability, will be included in the calculation of a debtor's 'disposable income' so long as it appears that the debtor is continuing to overpay his or her taxes. *In re Gonzalez*, 378 B.R. 168, 175-76 (Bankr. N.D.Ohio 2007).

In applying this precedent to this case, no indication was given that the Debtors' situation would warrant providing a special allowance for their 401(k) contribution. Both of the Debtors are young and, from all appearances, in good health. The Debtors also, according to their bankruptcy schedules, presently hold the sum of $55,481.39 in an exempt 401(k) account. Consequently, it is reasonable to assume that the Debtors have available ample opportunity and resources to further rebuild their retirement savings.

**In re Rex and Nicki Reimer**
**Case No. 07-32787**

Things are similarly true with respect to the Debtors' tax obligations. For the past two years the Debtors have received tax refunds of approximately $5,000.00, representing a monthly tax overpayment of around $400.00. Of equal significance, the weight of the evidence indicates that the conditions giving rise to these past tax refunds will continue. A logical connection, therefore, exists that the Debtors are continuing to overpay their tax obligations by approximately $400.00 per month.

Accordingly, when this $400.00 in additional income is then added to the $109.98 the Debtors presently, but improperly, allocate to their 401(k) account, the amount of 'disposable income' available to the Debtors increases significantly. From $57.44, as the Debtors originally set forth, to just under $570.00. Over 60 months, the length of a Chapter 13 plan, this amounts to $34,200.00.

Excluding their student-loan debt, the Debtors set forth $72,395.09 in unsecured debt. As a result, without any other adjustment to the Debtors' monthly budget, and even continuing to allocate for the full payment of their student-loan obligation, the Debtors have the ability to pay almost 50% of their unsecured debt. While this percentage of a remuneration to unsecured creditors does necessarily warrant a finding of abuse, it does place on the Debtors a burden to show why they cannot make at least an attempt to pay those obligations, the majority of which are credit-card debts, they voluntarily incurred. However, beyond vague statements that their financial situation could worsen, the Debtors were unable to make such a showing.

To the contrary, Mrs. Reimer let it be known that she may return to work in the future, thus resulting in an increase in the Debtors' household income. Moreover, the Debtors' assertion that they may require in the near future a newer car, thus potentially increasing their expenses, does not change things. If this does ultimately prove to be true, appropriate allowance for this change in circumstance may be made in a plan of reorganization.

Page 7

In re Rex and Nicki Reimer
Case No. 07-32787

      Based then on the foregoing discussion, it is the finding of this Court that, under the 'totality of the circumstances,' the filing of this case by the Debtors constituted an abuse for purposes of § 707(b)(3). Accordingly, unless the Debtor voluntarily converts this case, the Court is bound to promptly enter an order of dismissal pursuant to § 707(b)(1). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

      Accordingly, it is

      **ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Tuesday, March 4, 2008, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

      **IT IS FURTHER ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

      Dated: February 21, 2008

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 8

07-32787-rls   Doc 31   FILED 02/21/08   ENTERED 02/21/08 15:22:05   Page 8 of 9

# CERTIFICATE OF SERVICE

Copies were mailed this 21st day of February, 2008 to:

Rex A Reimer
23871 Portage Road
Weston, OH 43569

Nicki L Reimer
23871 Portage Road
Weston, OH 43569

Richard A Schmidt
230 East Court St.
Bowling Green, OH 43402

Ericka S Parker
33 S. Michigan, #203
Toledo, OH 43604

Dean Wyman
201 Superior Ave, #441
Cleveland, oh 44114

                                                   /s/Diana Hernandez
                                                Deputy Clerk, U.S. Bankruptcy Court